Robert E. Zimmerman and Helen E. Zimmerman v. Commissioner.
Zimmerman v. Commissioner
Docket No. 73389.
United States Tax Court
T.C. Memo 1960-257; 1960 Tax Ct. Memo LEXIS 33; 19 T.C.M. (CCH) 1456; T.C.M. (RIA) 60257; November 30, 1960
J. Bruce Donaldson, Esq. and Wm. D. Cohan, Esq., for the petitioners. John J. Yurow, Esq. and Robert J. Fetterman, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined the following deficiencies in income tax and additions to tax: Additions to Tax
Section
Section
Section
Section
Taxable
293(b)
294(d)(2)
294(d)(1)(A)
6653(b)
Year Ended
Deficiency
I.R.C. 1939
I.R.C. 1939
I.R.C. 1939
I.R.C. 1954
12/31/47
$1,387.21
$ 693.61
$ 83.23
$254.81
12/31/48
334.52
167.26
20.07
96.45
12/31/49
2,448.82
1,224.41
134.39
12/31/50
2,201.44
1,100.72
132.09
12/31/51
1,851.46
925.73
106.23
166.97
12/31/52
832.24
416.12
45.07
12/31/53
1,712.70
856.35
62.02
12/31/54
5,631.88
331.43
$2,815.94
12/31/55
3,230.30
1,615.15
*34 The issues are: 1. Whether petitioners understated their income for the years 1947 through 1955 in amounts as computed by respondent under the net worth plus nondeductible expenditures method. 2. Whether a part of the deficiency for each of the years 1947 through 1955 was due to fraud with intent to evade tax. 3. Whether the income tax returns for the years 1947 through 1952 were false and fraudulent with intent to evade tax within the meaning of section 276(a), Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated. They are found accordingly. Petitioners Robert E. and Helen E. Zimmerman are husband and wife and reside in Defiance, Ohio. They filed joint Federal income tax returns for the years 1947 through 1955 with the then collector or district director of internal revenue at Toledo, Ohio. Robert was born in Ohio in 1918 and spent his childhood on the family farm. In 1935 he and his wife were married. They lived with their family for some time after their marriage, then in 1937 moved to Dayton, Ohio, where Robert worked for a local power and light company as a truck driver. During the evenings in Dayton he began to repair watches *35 and clocks at home. In 1939 Robert and his wife moved to Michigan where he worked for his cousin as an apprentice learning fine watch repairing. After his apprenticeship ended he was employed as a watch repairman, first in Michigan and then in Dayton. During at least a part of this time he continued to do repair work on watches and clocks in his home. During the period from 1935 to 1945 two children were born to Robert and his wife During this period his earnings were modest and he and his family lived frugally. In 1945 Robert moved with his family to Defiance, Ohio, where he purchased an operating retail jewelry store. This store, known as Zimmerman's Jewelry, and hereafter sometimes called the Defiance store, opened for business under Robert's proprietorship in September 1945. The purchase price of this business was $7,500. To pay this amount he borrowed $2,500 from his father, $2,500 from a bank and supplied $2,500 from his own funds. At about this time petitioners also purchased a house in Defiance for about $7,500. To pay for it, $5,500 was borrowed from a bank and the remainder was supplied from their own funds. Robert operated the Defiance store as a sole proprietorship *36 during all the years in question. It sold watches, jewelry, electric shavers and other small appliances. He devoted most of his time to the store. During business hours at least three persons were normally present: a salesgirl, a watch repairman and Robert. At the store he spent most of his time repairing watches and jewelry, but he sometimes made sales to customers as well. His wife worked in the store on less than a full-time basis. Although she sometimes waited on customers, her main functions were supervising the sales girls and maintaining the store's books and records. Robert and his wife did all of the buying for the store and often traveled to the larger midwestern cities on buying trips. When Robert took over operation of the store in 1945 he hired an accountant to set up a bookkeeping system and supervise the store's records. In 1947 petitioners began keeping the records themselves using the system which had been set up for them. In 1949 they retained an accountant who supervised the record keeping, although Robert's wife continued to make the bookkeeping entries. This arrangement was continued through 1955. For cash sales a sales slip was made out in duplicate showing *37 the amount of the sale and any sales tax involved. The second copy of the slip was retained and the amount of the sale was rung up on the cash register which printed the amount on paper tape. Credit sales were handled in the same manner, except that only the amount of cash then received was rung up. After the sale, a credit card showing the amount of the sale, the cash payment and the balance due was made out and filed under the customer's name. As payments were made on the balance due, the amount of the payment was rung up on the cash register and later entered on the customer's credit card. Amounts received from watch repair transactions were recorded in the same manner as sales of merchandise. Disbursements for expenses of the business were usually paid by check. A check register was maintained and cancelled checks were retained. When small petty cash disbursements were made from the cash register a withdrawal slip was filled out with the amount involved. Amounts expended by check or by cash for petitioners' personal expenses were recorded in the same manner. Twice each month a summary sheet reflecting cash receipts and disbursements was prepared from the cash register tapes *38 and withdrawal slips. The summary sheets were placed in a monthly folder along with their supporting data and were maintained as a part of the business records. The amounts on the summary sheets and data from the check register were posted to permanent journals which were kept on a yearly basis. All subsidiary records were kept for five years and then destroyed. These journals accurately reflected the underlying data from which they were prepared. Journals for the years 1947 through 1955 and all underlying data for the years 1952 through 1955 were made available for respondent's audit and were present in the courtroom during the hearing of this case. At year end the merchandise inventory of the store was taken by a physical count and was valued at cost. At the end of each year some portion of the inventory had not as yet been paid for. In 1951 petitioners opened a retail woman's apparel shop in nearby Van Wert, Ohio, which was managed by Schlatter. An accountant set up a double entry bookkeeping system on an accrual basis for this store. The manager perpared daily summary sheets which showed gross receipts and petty cash expenses. The expenses of the business were paid by check *39 and supported by invoices. All entries in the records were under the general supervision of the accountant. The records of this business accurately reflected all gross receipts and expenses of the business and petitioners' income tax returns accurately reported income as shown on its books. Petitioners spent little time with the Van Wert apparel shop. It had a loss from its operations in 1951 and petitioners sold it early in 1952. In October 1953 Robert started a retail jewelry store in Van Wert and employed Killion to manage the business. Robert's accountant set up a double entry bookkeeping system on an accrual basis, supervised the records of the business and prepared balance sheets and profit and loss statements. Killion received a weekly salary and a share in net profits from the store. He kept daily summary sheets of transactions and Robert's wife periodically posted gross receipts, expenses and other data to permanent ledgers. Robert took no part in the normal day-to-day operation of this business and handled none of its sales. The records of the business accurately reflected gross receipts and expenses of the business and petitioners' income tax returns accurately reported *40 income as shown on its books. Respondent determined deficiencies in petitioners' income by the net worth and expenditures method for the years 1947 through 1955. A summary of the understatements of income determined thereby appears below: 1947
1948
1949
1950
1951
Correct Adjusted
$16,182.55
$9,859.68
$15,652.32
$15,246.62
$9,948.01
Gross Income
Adjusted Gross Income
9,057.92
7,818.83
3,796.10
5,980.51
2,785.68
Reported
Understatements
$ 7,124.63
$2,040.85
$11,856.22
$ 9,266.11
$7,162.33
Percentage of
79%
26%
312%
155%
257%
Understatement
Total for
1952
1953
1954
1955
Period
Correct Adjusted
$15,841.80
$12,873.77
$16,652.77
$25,157.20
$137,414.72
Gross Income
Adjusted Gross Income
9,757.56
4,274.16
7,525.01
13,272.13
64,267.90
Reported
Understatements
$ 6,084.24
$ 8,599.61
$ 9,127.76
$11,885.07
$ 73,146.82
Percentage of
62%
201%
121%
89%
114%
Understatement
During Robert's childhood on the farm his father kept the family savings in a box which he kept in the house. When Robert married and moved away from the farm he followed the same practice and kept *41 his savings in cash in a green fishing tackle box which he usually kept in the bedroom. From time to time in the years before they moved to Defiance, amounts were added to the cash savings but seldom were any sums taken out. In 1947 petitioners installed a small wall safe in the basement of their house and thereafter the cash savings were kept in it. When in later years they moved to other houses they took the safe with them. After moving to Defiance, occasionally amounts were taken out of the cash savings. In 1945 Robert used about $2,500 in cash in the purchase of the Defiance store and about $2,000 to buy a house. In 1946 he loaned about $600 in cash to his brother. Early in 1947 he made a loan of $5,000 in cash to a friend and later in the same year loaned $1,000 in cash to his brother. During 1949 and 1950 he used about $5,000 or $6,000 in cash in the construction of a house. In 1951 about $5,000 in cash was invested in the Van Wert dress shop and later when the Van Wert jewelry store was started, $4,000 to $5,000 in cash was used. When the objects in which the cash was invested were sold, or when the loans were repaid, cash was returned to the box or to the safe. Petitioners *42 had between $10,000 and $15,000 of undeposited cash on hand on December 31, 1946. Respondent did not include any amount in the net worth statement for petitioners' personal undeposited cash. Petitioners maintained a bank account with a Defiance bank in which the receipts from the Defiance store were deposited. Their only other bank account was the business account of the Van Wert jewelry store in a Van Wert bank in which the receipts and deposits of that business were segregated and kept. The following schedule shows the total deposits in the Defiance bank and the total funds available for deposit for the years 1953, 1954 and 1955. The latter amounts include gross receipts from the Defiance store, other items reported as income on petitioners' tax returns, funds from non-taxable sources such as collections of Federal excise taxes and State sales taxes and the proceeds of several loans. Year
1953
1954
1955
Gross Deposits
$84,650.30
$89,687.15
$111,505.18
Total Funds Available for Deposit
84,179.56
87,266.42
114,217.30
The accountant who had set up the bookkeeping system for the Defiance store prepared petitioners' income tax returns for the years *43 1945 and 1946. In 1947 and 1948 petitioners kept their own books and records without assistance from an accountant. In 1948 and again in 1949, Robert took his business records to the local internal revenue service office, requested and was given assistance in making out his tax returns for 1947 and 1948. Early in 1949 a revenue agent from the local office audited petitioners' 1946 return. In their 1946 return petitioners had reported income from the Defiance store by subtracting merchandise purchases and business expenses from gross receipts. The agent changed the method of reporting income from the Defiance store by taking gross receipts and subtracting therefrom cost of goods sold (beginning inventory plus purchases less ending inventory) to arrive at gross profits. This method of reporting income from the Defiance store was thereafter followed in all succeeding years here in question. The revenue agent's 1949 report contained the following statement: It was found that the records had been poorly kept but the required information could be obtained by checking and assimilation of the items. The books had been kept by an accountant. Mr. Zimmerman now keeps his own records and same *44 were found to be in good shape. In 1949 petitioners retained an accountant who supervised the keeping of their business records and who prepared their tax returns for the years 1949 through 1955 from their books and records. In November 1956 a revenue agent from the local office who had joined the revenue service sometime in 1955, noticed that petitioners owned a $20,000 home and an airplane. After checking petitioners' income tax returns for 1953 and 1954 which reported taxable income of $4,274.16 and $7,525.01, respectively, he initiated an audit of their books and records. Petitioners filed their income tax returns for the years 1951 through 1955 in January of the following years. On December 14, 1956 they signed consent agreements for the years 1951 and 1953, extending the period for assessment to June 30, 1958. Respondent mailed the statutory notice for all the years herein on March 14, 1958. Petitioners pleaded the statute of limitations for the years 1947 through 1953. No part of the deficiencies for any of the years was false and fraudulent with intent to evade tax. None of the returns filed by petitioners for the years 1947 through 1955 was false or fraudulent with *45 intent to evade tax. Petitioners' books and records accurately reflected their income for all of the years 1947 through 1955. Opinion While this case presents issues of fraud, statute of limitations and deficiencies determined by the net worth method, they are all resolved by our affirmative finding of fact that petitioners' books and records correctly showed petitioners' income during the years in question. Respondent does not assail petitioners' method of bookkeeping by which they recorded their receipts and disbursements and he admits petitioners' income tax returns accurately reflected the information which appeared on the books, and returned the income as shown by the books. Respondent agrees that the books of the two Van Wert stores correctly reflected receipts and expenditures and that the net income for these stores was correctly reported. Respondent theorizes, solely on the basis of the spread between his net worth computation and petitioners' reported income, that petitioners received income from sales in the Defiance store, which were not rung up on the cash register, not received on the books and not reported in the returns. We recognize, of course, that the net worth *46 method can be employed as circumstantial evidence of unreported income and as evidence that the books and records are inadequate, inaccurate, or false. Morris Lipsitz, 21 T.C. 917. However, we believe the testimony of petitioner, his wife and the several employees of the store during all of the years involved that there were no unrecorded sales. Petitioners also introduced much evidence attacking the correctness of certain items of respondent's net worth computation. There is no need for extended discussion of such evidence though we can comment petitioners were able to show a significant number of errors in the net worth computation. As we view the record here, the affirmative finding of fact that is amply sustained by the evidence is that petitioners' books and records for all of the years involved were correct and complete and they correctly recorded all sales transactions. Cf. Thomas A. Talley, 20 T.C. 715. Our finding of fact in this respect disposes of all issues in favor of petitioners. Decision will be entered for the petitioners.